IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-179 |
| | : | |
| v. | : | |
| | : | |
| LEHIGH COUNTY JAIL | : | |
| ADMINISTRATION, TYLER WOLFE, | : | |
| DAVID VOLPE, ALTON MURRAY, | : | |
| DAWSON, BROOKE ALBERTA, | : | |
| ROBERT MCFADDEN, STEVEN | : | |
| MILLER, MICHAEL DAILEY, KYLE | : | |
| RUSSEL, WILDAY, and AMANDA | : | |
| MEAD VOLPE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                    May 6, 2022

The *pro se* plaintiff, a convicted and sentenced inmate serving time in a county jail, has sought leave to proceed *in forma pauperis* in an action against defendants involved with the county jail. He raises claims for violations of his Eighth Amendment rights under 42 U.S.C. § 1983 based on incidents which occurred on two different days. On the first of these dates, the plaintiff alleges that a nurse at the jail knowingly gave him the wrong medication, which caused him to become ill. The plaintiff notified a correctional officer about this issue, and the correctional officer ignored him. On the second date, the plaintiff alleges that a correctional officer maliciously sprayed him with mace, he was beaten until he fractured his right wrist, he had his clothes and mattress removed from his cell, he had the water turned off to his cell, another correctional officer grabbed his genitalia, and yet another correctional officer sexually harassed him.

After reviewing the *in forma pauperis* application and screening the complaint as required by 28 U.S.C. § 1915(e)(2), the court will permit the plaintiff leave to proceed *in forma pauperis*, will allow the plaintiff's claims for excessive force, sexual abuse, and deliberate indifference to serious medical needs against two of the correctional officer defendants to proceed, and will dismiss without prejudice all the other claims in the complaint. The court will also allow the plaintiff the opportunity to cure those claims that the court is dismissing without prejudice or notify the court that he intends to proceed on only the claims for excessive force, sexual abuse, and deliberate indifference to serious medical needs that have passed statutory screening.

## I.     ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Osvaldo Pumba ("Pumba"), commenced this action by filing an application for leave to proceed *in forma pauperis* and a complaint that the clerk of court docketed on January 13, 2022. *See* Doc. Nos. 1, 2. On January 28, 2022, this court denied the *in forma pauperis* application without prejudice to Pumba refiling a new application along with a prisoner trust fund account statement as required by 28 U.S.C. § 1915(a)(2). *See* Jan. 28, 2022 Order at 2–3, 7, Doc. No. 4.[1] On February 2, 2022, the clerk of court docketed a number of documents submitted by Pumba, including (1) a motion for a speedy trial, (2) a motion "of one million dollars lawsuit," (3) a motion for extension of time, (4) a motion for leave to proceed *in forma pauperis*, and (5) a prisoner trust fund account statement. *See* Doc. Nos. 5–9. On February 7, 2022, the clerk of court docketed three additional documents submitted by Pumba: (1) two motions for leave to

---

[1] Pumba has also filed five other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-134, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3. The court's January 28, 2022 Order also addressed Pumba's *in forma pauperis* applications in four of those cases.

The court also notes that in each of the five other cases, Pumba asserts claims under 42 U.S.C. § 1983 against defendants associated with the Lehigh County Jail. This memorandum opinion only addresses the above-captioned matter.

proceed *in forma pauperis* and (2) another prisoner trust fund account statement.[2] *See* Doc. Nos. 11, 13–14.

Regarding the complaint, Pumba has named the following defendants: (1) the Lehigh County Jail Administration; (2) L.P.N. Tyler Wolfe ("LPN Wolfe"); (3) Lieutenant Brooke Alberta ("Lieutenant Alberta"); (4) Kyle Russell, Deputy Warden ("Deputy Warden Russell"); (5) Sergeant Amanda Mead Volpe ("Sergeant Volpe"); (6) Robert McFadden, Deputy Warden of Security ("Deputy McFadden"); (7) correctional officer David Volpe ("C.O. Volpe"); (8) correctional officer Alton Murray ("C.O. Murray"); (9) correctional officer Wilday ("C.O. Wilday"); (10) Lieutenant Dawson; (11) Lieutenant Michael Dailey ("Lieutenant Dailey"); and (12) Steven Miller, Deputy Warden of Treatment ("Deputy Miller"). As for the allegations in the complaint, Pumba, a convicted and sentenced inmate, alleges facts about two separate events at the Lehigh County Jail. *See* Compl. at ECF pp. 4–5, Doc. No. 2.[3]

The first incident occurred on May 29, 2021. *See id.* at ECF p. 4. On this date, Pumba alleges that LPN Wolfe "intentionally or knowingfully [sic]" gave him psychiatric medications that had not been prescribed to him. *See id.* LPN Wolfe also allegedly gave Pumba the wrong medications at least four other times prior to then. *See id.* Pumba asserts that the side effects from these psychiatric medications caused him to become "very sick . . . for at least two weeks." *Id.* Although Pumba notified Lieutenant Alberta that the medication made him sick, she allegedly "ignored" him. *Id.*

The second incident (or, more accurately, series of incidents) occurred on June 16, 2021. *See id.* On this date, Sergeant Volpe told the officers working on Pumba's floor to not give him

---

[2] The court has considered Pumba's three *in forma pauperis* applications/motions collectively. They are collectively referred to as the "IFP Application."

[3] Pumba submitted copies of two grievances along with his complaint. *See* Doc. No. 2-1.

dinner. *See id.* at ECF p. 5. Later, Sergeant Volpe called the CERT team and other prison officers, such as Lieutenant Dawson, C.O. Volpe, and C.O. Murray, to Pumba's cell. *See id.* Sergeant Volpe then "maliciously sprayed [Pumba] mace spray for at least four hours straight." *Id.* at ECF p. 4. Apparently, this spraying occurred in multiple areas of the jail. *See id.* at ECF p. 5. Sergeant Volpe then ordered the correctional officers to remove Pumba's clothes and C.O. Volpe "intentionally grabbed [Pumba's] manhood in a sexually abus[ive] or harass[ing] way." *Id.*

During this incident on June 16, 2021, Pumba alleges that he was "beaten up until [his] right wrist fractured." *Id.* at ECF p. 5. He also asserts that he suffered a leg wound due to the mace burning his skin. *See id.* The mace spray also caused Pumba respiratory problems, and he now takes medications to breathe properly. *See id.* at ECF p. 4.

Also on June 16, 2021, Sergeant Volpe and Lieutenant Dawson turned off Pumba's water and removed his mattress for 28 hours. *See id.* at ECF p. 5. Although Pumba asked Lieutenant Dawson and Michael Dailey to turn the water back on and to return his mattress, they denied his requests. *See id.*

As a final incident on June 16, 2021, Pumba alleges that he was left naked and on suicide watch. *See id.* C.O. Wilday came to Pumba's cell door and began sexually harassing him. *See id.* C.O. Wilday told Pumba that "he want[ed] to get chocked [sic] with [Pumba's] BBC." *See id.*

Based on these allegations, Pumba asserts claims under 42 U.S.C. § 1983 against the defendants.[4] *See id.* at ECF p. 1. He appears to seek money damages in the amount of $2 million. *See id.* at ECF p. 4.

---

[4] Although Pumba does not allege what constitutional provision he believes was violated, the court presumes he brings his claims under the Eighth Amendment, which is applicable here because Pumba is a convicted and sentenced inmate. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

## II.    DISCUSSION

### A.    The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States,* 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Pumba is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[5]

**B.**     **Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

---

[5] As Pumba is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## C.    Analysis

Pumba is seeking relief in this case under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

### 1.    Claims Against the Lehigh County Jail Administration

Pumba names the "Lehigh County Jail Administration" as a defendant. It is unfortunately unclear to the court who the Lehigh County Jail Administration is and why Pumba names it as a defendant in this case. Pumba does not include any specific allegations in the complaint that would explain the personal involvement of this defendant in the events giving rise to his claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that, to be liable, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs").

8

In addition, the absence of any specific allegations about the Lehigh County Jail Administration warrants dismissal of this defendant under Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires pleadings to contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) ("Under Rule 8(a)(2), a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); *Travaline v. U.S. Supreme Ct.*, 424 F. App'x 78, 79 (3d Cir. 2011) (per curiam) ("Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand for the relief sought.'" (quoting Fed. R. Civ. P. 8(a)(2), (3))). To determine whether a pleading satisfies Rule 8's "plain" statement requirement, the court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). The paramount consideration for the court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94 (citations omitted). Since Pumba has failed to allege any facts about the Lehigh County Jail Administration's involvement in his alleged constitutional harm, he has failed to state plausible claims against it. Accordingly, the court will dismiss without prejudice Pumba's claims against the Lehigh County Jail Administration.

### 2.  Claims Against LPN Wolfe and Lieutenant Alberta

The court has interpreted the complaint as containing claims for inadequate medical care under the Eighth Amendment against LPN Wolfe and Lieutenant Alberta. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*,

511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Pumba alleges that on four occasions, LPN Wolfe "intentionally or knowingfully [sic]" gave him psychiatric medications that were not prescribed to him. He further alleges that he suffered side effects and was "very sick" from taking the wrong medications. *See* Compl. at ECF p. 4. These factual allegations are sufficient for Pumba to proceed on a claim that LPN Wolfe was deliberately indifferent to his serious medical needs as they support a plausible inference that LPN Wolfe's error went beyond negligence to reach deliberate indifference. *See, e.g.*, *West v. Millen*, 79 F. App'x 190, 194 (7th Cir. 2003) ("Intentionally interfering with a medical staff's prescribed

treatment in the face of a substantial risk to an inmate's health may constitute deliberate indifference." (citations omitted)); *Snyder v. Bergeron*, Civ. A. No. 20-2158, 2021 WL 784813, at * (E.D. La. Jan. 21, 2021) ("Obviously, if a state actor *intentionally* provides an inmate with the *wrong* medical treatment, that could, depending on the circumstances, constitute deliberate indifference." (citations omitted)); *Collins v. Grochowski*, Case No. 18-CV-1684, 2020 WL 514668, at * (E.D. Wis. Jan. 30, 2020) ("If [the defendant nurse] made a mistake, even if she was negligent or grossly negligent in doing so, then she was not deliberately indifferent and did not violate the Eighth Amendment. If, however, she intentionally placed the medication in the wrong bin, knowing it would go to [the plaintiff] despite his [no Keep on Person] restriction, then she may be liable."). Therefore, Pumba's Eighth Amendment claim against LPN Wolfe passes statutory screening.

Although Pumba may proceed with his claim against LPN Wolfe, he may not proceed yet on his Eighth Amendment claim against Lieutenant Alberta. He alleges merely that when he got sick from taking the psychiatric medications given to him by LPN Wolfe, he notified Lieutenant Alberta, who "ignored the fact." Compl. at ECF p. 4. These sparse allegations are insufficient to state a deliberate indifference claim. Pumba has not alleged sufficient facts showing that he had a serious medical need resulting from taking the psychiatric medication. He has also not provided any details about the symptoms from which he suffered, or how often he suffered from them. Simply alleging that he "got sick" is not enough to plausibly plead a serious medical need. In addition, Pumba has not alleged any facts from which it can be inferred that Lieutenant Alberta was aware that Pumba needed medical treatment or was otherwise deliberately indifferent to that need. Accordingly, the court will dismiss Pumba's Eighth Amendment claim against Lieutenant Alberta.

### 3.     Use of Mace Spray

#### a.     Excessive Force Claim Against Sergeant Volpe

Pumba alleges that Sergeant Volpe followed him around to various prison locations while "maliciously spray[ing]" him with mace "for at least four hours straight." Compl. at ECF pp. 4, 5. He further alleges that because of his prolonged exposure to mace spray, he suffers from respiratory problems and needs to take medications to breathe properly. *See id.* at ECF p. 4. The court has interpreted Pumba to be asserting an excessive force claim against Sergeant Volpe. To the extent he has asserted an excessive force claim, he has stated a plausible claim against Sergeant Volpe.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976))). When screening an Eighth Amendment excessive force claim under section 1915, the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7)). Further,

> [t]he factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and

> excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the
> force and the circumstances in which it is applied, not by the resulting injuries. *Id.*
> at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). The Eighth
> Amendment does not protect against a de minimis use of physical force, so long as
> it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at
> 107 (quoting *Hudson*, 503 U.S. at 9-10).

*Id.* Moreover, "[t]he use of chemical agents to subdue recalcitrant prisoners is not cruel and

unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020)

(per curiam) (citation omitted).

The allegations Pumba has included in the complaint provide a sufficient basis for the court

to infer that Sergeant Volpe used excessive force on him. Accordingly, the court will permit this

claim to proceed against Sergeant Volpe.[6]

b.     Failure to Intervene Claims Against Lieutenant Dawson, C.O. Volpe, and C.O. Murray

Pumba alleges that when Sergeant Volpe "started to spray [him] with mace," she called

Lieutenant Dawson, C.O. Volpe, and C.O. Murray. *See* Compl. at ECF p. 5. While less than clear,

the court understands Pumba to asserting failure to intervene claims against Lieutenant Dawson,

C.O. Volpe, and C.O. Murray.

A correctional officer's failure to intervene can serve as a basis for Eighth Amendment

liability under section 1983 if the officer "has a reasonable opportunity to intervene and simply

failed to do so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). Nonetheless, "an officer is

only liable if there is a realistic and reasonable opportunity to intervene." *Id.* at 651.

In this case, Pumba's allegations do not provide any details as to whether Lieutenant

Dawson, C.O. Volpe, and C.O. Murray were even present when Sergeant Volpe sprayed Pumba

with mace "for at least four hours straight." Compl. at ECF p. 4. Pumba merely allege that these

---

[6] Pumba also alleges that he was "beaten up until [his] right wrist fractured." Compl. at ECF p. 5. Pumba does not
allege any specific facts about who was involved in this altercation. Until Pumba provides additional details about this
event, the court is unable to assess whether Pumba has stated a plausible excessive force claim based on this allegation.

defendants were called around the time of the mace incident. Without additional details, the court is unable to determine whether these defendants had a reasonable opportunity to intervene, and if they did, whether they refused to do so. Therefore, the court will dismiss any Eighth Amendment failure to intervene claims against Lieutenant Dawson, C.O. Volpe, and C.O. Murray.

### 4.  Sexual Abuse Claims Against C.O. Volpe and C.O. Wilday

Pumba has asserted claims for sexual abuse or harassment against C.O. Volpe and C.O. Wilday. *See* Compl. at ECF p. 5. Sexual abuse and harassment violate an inmate's rights under the Eighth Amendment, which prohibits cruel and unusual punishment. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("Today, we join numerous sister Circuits in holding that prison sexual abuse can violate the Constitution." (citations omitted)). Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components. *See id.* at 475 ("[W]e conclude that the test will turn on an analysis of a subjective and an objective component. That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind."). Regarding the subjective component, the court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Concerning the objective component, the court considers whether the defendant's action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." *Id.* at 475, 477 (citations omitted). When considering this latter component, the court is cognizant that

"not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Based on the allegations in the complaint, Pumba has stated a plausible Eighth Amendment claim for sexual abuse against C.O. Volpe, who is alleged to have "intentionally grabbed [Pumba's] manhood in a sexually abus[ive] or harass[ing] way." Compl. at ECF p. 5. Pumba has included factual allegations which plausibly state both the objective and subjective components of a sexual abuse claim. Thus, the court will permit Pumba to proceed on his sexual abuse claim against C.O. Volpe.

Concerning C.O. Wilday, Pumba alleges that while he was naked "on suicide watch," C.O. Wilday came to his door and talked to him in a "sexually harassing" way. *Id.* An Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator. *See Ricks*, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual *contact*." (emphasis added)); *Williams v. Wetzel*, 776 F. App'x 49, 53 (3d Cir. 2019) (per curiam) (affirming district court's dismissal of Eighth Amendment sexual conduct claim because prisoner's allegations did not involve any sexual contact between prisoner and corrections officer); *McCain v. Wetzel*, Civ. A. No. 17-194 Erie, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation" (citation omitted)); *Washington v. Gilmore*, Civ. A. No. 15-1031, 2017 WL 4155371, at *8 (W.D. Pa. Aug. 31, 2017) (dismissing Eighth Amendment sexual assault claim where plaintiff did not allege any "direct physical contact" with alleged perpetrators). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to

satisfy the objective element of an Eighth Amendment sexual harassment claim." *McCain*, 2018 WL 1211507, at *3 (citation omitted).

Pumba has failed to state a plausible Eighth Amendment claim for sexual abuse or harassment against C.O. Wilday. Pumba does not allege that C.O. Wilday had any direct physical contact with him but only that C.O. Wilday made sexually harassing comments to him while Pumba was naked and on suicide watch. Without more, these facts are insufficient to meet the objective prong of an Eighth Amendment sexual abuse claim. Accordingly, the court will dismiss Pumba's Eighth Amendment claim against C.O. Wilday.

### 5.    Conditions of Confinement Claims Against Sergeant Volpe, Lieutenant Dawson, and Lieutenant Daily

Pumba alleges that Sergeant Volpe and Lieutenant Dawson were responsible for turning off the water in Pumba's cell and removing his mattress and that Lieutenant Dawson and Lieutenant Daily refused his requests to turn the water back on and return his mattress, apparently while Pumba was on suicide watch. Pumba further alleges that the water shut off and mattress deprivation lasted 28 hours. The court has interpreted these allegations as Pumba attempting to assert claims based on the conditions of his confinement under the Eighth Amendment.

Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). In general, "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994)). Regarding the first prong, necessities include food, clothing, shelter, medical care, and reasonable safety. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000) ("[W]hen the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety." (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989))). As for the second prong, a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Only conditions of confinement that "cause inmates to ensure such genuine privations and hardship over an extended period of time" violate the Eighth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (citation and internal quotation marks omitted).

Pumba has not stated a plausible Eighth Amendment claim against Sergeant Volpe, Lieutenant Dawson, or Lieutenant Daily. The deprivation of a mattress for 28 hours, without more, does not amount to a constitutional violation actionable under § 1983. *See, e.g.*, *Adderly v. Ferrier*, 419 F. App'x 135, 139–40 (3d Cir. 2011) (per curiam) (finding that depriving inmate of mattress for seven days "may not have been harsh" but did not "constitute a denial of the minimal civilized measures of life's necessities" (internal quotation marks omitted)); *Freeman v. Miller*, 615 F. App'x 72, 77 (3d Cir. 2015) (per curiam) (affirming district court's decision to grant summary judgment on conditions of confinement claim where suicidal inmate placed in "hard cell" was deprived "desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper" for seven days).

In addition, Pumba has not alleged a plausible claim based on the deprivation of water for 28 hours. In this regard, Pumba has not alleged whether, during the water shut off, he was

prevented from using the bathroom, he was provided other fluids for drinking, or he was otherwise denied basic necessities. *Compare Collier v. Adams*, 602 F. App'x 850, 852 (3d Cir. 2015) (per curiam) (concluding that there was no Eighth Amendment violation where prisoner's water was shut off for 77 hours, but other fluids were available to him), *with Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 228–29 (3d Cir. 2015) (holding that complete lack of potable water for three days "other than water in a toilet bowl . . . poses a clear 'substantial risk of serious harm' to an inmate" (quoting *Farmer*, 511 U.S. at 833-34)). Absent additional details and context related to the water shut off, Pumba has not adequately pleaded a plausible conditions of confinement claim.

### 6.    Claims Against Deputy Warden Russell, Deputy McFadden, and Deputy Miller

Although Pumba names Deputy Warden Russell, Deputy McFadden, and Deputy Miller as defendants in the complaint, he fails to clearly state the basis for these claims against these defendants. He includes no factual allegations about them in the body of the complaint, and neither of the grievances he has attached to the complaint references them.

Individuals must have personal involvement in the unconstitutional conduct to be liable. *See Rode*, 845 F.2d at 1207. Pumba has not alleged that Deputy Warden Russell, Deputy McFadden, or Deputy Miller were personally involved in his alleged constitutional harm. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (per curiam) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).

Pumba has also failed to allege a basis for supervisory liability against these defendants. If a plaintiff seeks to hold a supervisor liable for the unconstitutional acts by subordinates, there are two theories of supervisory liability: (1) "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2) "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).

Here, Pumba has not alleged that these defendants acted "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (alteration in original) (quoting *A.M.*, 372 F.3d at 586), *rev'd on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). He further has not alleged that the defendants "participated in violating [his] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Therefore, Pumba has failed to state a plausible claim for supervisory liability against Deputy Warden Russell, Deputy McFadden, and Deputy Miller.

To the extent that Pumba's claims against Deputy Warden Russell, Deputy McFadden, and Deputy Miller are based on their alleged failure to respond adequately to grievances he filed, the claims are also implausible. A prison official's involvement in the grievance process, alone, is generally insufficient to establish the requisite personal involvement for liability under section 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although

some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). Furthermore, since there is no right to a grievance process, Pumba cannot state an independent claim based on the handling of his grievances. *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (per curiam) ("[A] prisoner has no free-standing constitutional right to an effective grievance process, *see Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991), . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances."). Accordingly, the court will dismiss Pumba's claims against Deputy Warden Russell, Deputy McFadden, and Deputy Miller.

### 7.    Miscellaneous Motions

Pumba has also filed four other motions in this case: (1) a motion for speedy trial; (2) a motion "of one million dollars lawsuit"; and (3) a motion for extension of time. *See* Doc. Nos. 6, 7, 8. The court will address each motion in turn.

The court will deny Pumba's motion for speedy trial. It is unclear whether Pumba is attempting to reference a pending criminal trial or the civil trial in this case. If he is seeking a speedy trial in this case, it is premature as it is unclear at this juncture whether this case will go to trial. If he is seeking a trial in a pending criminal matter, he may not seek that relief in a civil action under § 1983 because "[a] speedy trial claim necessarily seeks dismissal of the indictment and leads to immediate release from confinement, so it must be brought through a habeas petition after

exhausting state remedies." *Garrett v. Murphy*, No. 21-2810, 2022 WL 313799, at *1 (3d Cir. Feb. 2, 2022) (per curiam) (citing cases).

As for Pumba's motion "of one million dollars lawsuit", the court also denies this motion. It appears that Pumba is attempting to make a preliminary request for relief, which is both premature and somewhat duplicative of the relief he seeks in his complaint.

Finally, the court will also deny Pumba's motion for an extension of time. In the motion, Pumba indicates that due to the "corrupted" jail where he is detained, he is unable to review mail or "use the electronics [or] cellphone." Doc. No. 8 at ECF p. 2. While Pumba makes this claim, it is unclear why or for what purpose Pumba needs or requests an extension. To the extent that Pumba needs additional time to file pleadings with the court, he may submit a specific request at the appropriate time.

## III.    CONCLUSION

For the foregoing reasons, the court will grant the IFP Application and will dismiss the following claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii): (1) Pumba's claims against the Lehigh County Jail Administrator; (2) the deliberate indifference claim against Lieutenant Alberta; (3) the failure to intervene claims against Lieutenant Dawson, C.O. Volpe, and C.O. Murray; (4) the sexual abuse claim against C.O. Wilday; (5) the conditions of confinement claims against Sergeant Volpe, Lieutenant Dawson, and Lieutenant Daily; and (6) the claims against Deputy Warden Russell, Deputy McFadden, and Deputy Miller. The court will allow Pumba's excessive force claim against Lieutenant Volpe, his sexual abuse claim against C.O. Volpe, and his deliberate indifference to serious medical needs claim against LPN Wolfe, to pass statutory screening. In addition, because the court cannot say at this time that Pumba cannot cure the defects in the claims that have been dismissed without prejudice, the court will grant Pumba

the option of filing an amended complaint to attempt to cure the defects in those claims or advise

the court that he seeks to proceed only on the claims that have passed statutory screening.[7]

     The court will enter a separate order.[8]

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[7] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

[8] This order will provide further instruction about Pumba's options for proceeding.